

Worker
Justice Center
*of New York*

April 25, 2025

Hon. Judith C. McCarthy, U.S. Magistrate Judge
*Via ECF*

Re:    **Cruz et al. v. Almamex Corp. et al., 7:24-cv-06197-KMK-JCM**
        **Request to Approve Settlement Agreement**

Dear Judge McCarthy:

We represent Plaintiff Manuela Cruz and Opt-In Eulogio Leon in this matter. We write to respectfully seek court approval of the parties' finalized settlement agreement (Ex. A), which provides for a total payment of $500,000 to Plaintiffs (inclusive of attorneys' fees and costs), in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Defendants do not oppose this request.

<u>Procedural History</u>

This action was filed on August 15, 2024 by Plaintiff Manuela Cruz ("Plaintiff Cruz" or "Cruz") against Defendants Almamex Corp., Alicia Mendoza, and Delfino Mendoza as a putative class and collective action on behalf of current and former non-managerial employees at Gabys Cafe. (Dkt. 1). The action alleges (1) several pay violations of the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) including, *inter alia*, minimum wage and overtime pay violations, failure to pay spread of hours pay, hiring notice and wage statement violations, and retaliation against Plaintiff Cruz and (2) unlawful discrimination on the basis of age against Plaintiff Cruz in violation of the New York Human Rights Law. After Defendants indicated their intent to file a motion to dismiss the hiring notice and wage statement claims, Plaintiff Cruz filed an amended Complaint on October 11, 2024, adding more details to those claims (Dkt. 10). Opt-In Eulogio Leon ("Opt-In Leon" or "Leon") also filed a consent to join the litigation (Dkt. 9). Defendants expressed interest in exploring settlement prior to motion practice seeking certification of a class or collective, and the parties requested the Court to hold a settlement conference in an attempt to resolve the disputes. (Dkt. 16). To conserve resources for settlement, Judge Karas stayed the deadline for serving discovery demands. (Dkt. 21).

After hours-long settlement conferences on February 12 and March 3, with invaluable assistance from the Court and extensive negotiations from both sides, the parties reached a settlement to resolve the case for $500,000.

**I.    Summary of Plaintiffs' Claims and Defendants' Defenses**

The settling individuals are former waitress Manuela Cruz and current cook Eulogio Leon, employed by Defendants' restaurant in Rhinebeck, NY. The complaint alleges that Defendants failed to pay at least the applicable minimum wage rate for up to 40 hours per week and actually

paid Plaintiff Cruz a fixed daily rate between $55-$65 throughout her over 6-year tenure. The complaint also claims that Defendants illegally retained tips from workers, including Plaintiff Cruz. Opt-In Leon joined the suit as an opt in plaintiff. He alleges that he was paid a weekly salary of between $1,300 to $1,600, despite consistently working 60-69 hours per week. Cruz and Leon allege that because they were paid fixed daily or weekly rates, Defendants failed to pay overtime wages when they worked over 40 hours in a week. Moreover, Cruz and Leon allege that they regularly worked shifts that spanned longer than 10 hours, however they were not paid spread-of-hours pay. Additionally, the complaint claims that Plaintiff Cruz and other similarly situated workers, such as Mr. Leon, did not receive a hiring notice nor an accurate wage statement with each payment, reflecting an accurate account of hours worked per week.

Plaintiff Cruz also asserts individual claims for retaliation and age discrimination. She claims that Defendants illegally retained employees' cash tips during lunch shifts, and that after she asked that Defendants distribute the cash tips to employees – a "complaint" within the meaning of the Labor Law – Defendants nitpicked her appearance and job performance, closely monitored her bathroom usage and created a highly stressful work environment that differed from their treatment of other employees. Plaintiff Cruz further alleges that she engaged in protected activity under the New York Labor Law by calling out sick for one day when she needed an emergency root canal, for which she was terminated. She also alleges that her workplace was permeated with discriminatory intimidation, ridicule, and insult directed at her by Defendants on the basis of her age, which negatively affected her emotional and physical health, resulting in depression, anxiety, and feelings of worthlessness.

Defendants deny Plaintiff Cruz and Opt-In Leon's allegations.

## II.    The Settlement is Fair and Resonable under the *Cheeks* Factors

Courts in the Second Circuit require judicial approval of FLSA claims sought to be settled by stipulated dismissal. *Cheeks*, 796 F.3d at 206. Any proposed FLSA settlement agreement must be "fair and reasonable" under the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Here, all of the factors support approving the parties' settlement.

### 1.    Plaintiffs' Possible Recovery at Trial and the Settlement Amount

The settlement amount of $500,000 is reasonable in light of Plaintiffs' calculations of their potential range of recovery at trial.

####    a.    Owed Wages (FLSA and NYLL)

If Cruz and Leon were successful in proving their hours and pay as alleged in the complaint, and Defendants were unsuccessful in their defenses, Cruz and Leon calculate that they would be

entitled to $587,765.26 in owed wages.[1] At trial, Cruz and Leon would present pay records and their own testimony to prove that although Plaintiff Cruz and Opt-In Leon regularly worked more than 40 hours per week, Defendants did not pay overtime at 1.5 times their regular hourly rate. Based on Defendants' records, the Court is likely to credit Cruz and Leon's recollection of hours worked. Accordingly, Plaintiff Cruz's potential owed wages are calculated using the applicable minimum wage rate for 11 hours per workday, for a total of 22-77 hours per week, plus time-and-one-half for all hours over 40 and an additional hour at minimum wage for spread-of-hours compensation. Cruz and Leon contend that, despite the requirement under the Hospitality Wage Order for hourly payment, Defendants paid Opt-In Leon a fixed weekly salary despite his consistent 66 to 69 hours of work per week. To calculate his regular rate, Opt-In Leon's total weekly earnings were divided by the lesser of 40 hours or his actual hours worked, per 12 N.Y.C.R.R. § 146-3.5(b).

Defendants have indicated that they would have sought to argue that Mr. Leon was an executive chef, exempt from overtime. If successful, such an argument could eliminate any recovery for Mr. Leon, since he was paid above minimum wage throughout his employment. While Leon believes he could defeat this argument and recover the full amount, and a jury can rely on Leon's best recollection given Defendants' records, there is risk in convincing a jury to fully credit their testimony on each point of dispute. Given this uncertainty, Opt-In Leon recognizes that settling this claim is more prudent than taking it to trial.

b.  Illegal Retention of Plaintiff Cruz's Tips

The complaint alleges that Defendants routinely kept employees' lunch shift tips, including Plaintiff Cruz's, unless she confronted them. Plaintiff Cruz estimates missing $20 in tips for each week she worked 4 days or fewer, and $40 for weeks with 5 to 7 days. Without tip records or time records, Plaintiff Cruz has estimated her damages at around $7,800 in tips, according to her best recollection. While Plaintiff Cruz believes she could recover the full amount, and a jury can rely on Plaintiff Cruz's best recollection given Defendants' records, there is risk in convincing a jury to accept these estimates.

c.  Wage Theft Prevention Act Statutory Damages

Defendants' alleged failure to provide accurate wage statements that provide a true accounting of all wages earned and all hours worked in that weekly period, could result in an award of $10,000 in statutory damages per Plaintiff.[2] While Cruz and Leon believe they would likely succeed on this claim, Defendants indicated that they would file a motion to dismiss these claims based on lack of standing under recent Circuit precedent. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024). The parties have already exchanged pre-motion letters and Plaintiff Cruz amended the complaint to specifically address these claims. Further litigation would

---

[1] For owed wages, Plaintiff Cruz is owed an estimated $126,115.61 and Plaintiff Leon is owed an estimated $461,649.65, according to Plaintiffs' computations.

[2] Plaintiffs allege that they are each entitled to $5,000 in statutory damages for Defendants failure to provide a hiring notice, NYLL §§ 195(1), 198(1-b), and an additional $5,000 for Defendants' failure to provide accurate wage statements. NYLL §§ 195(3), 198(1-d).

incur additional time and expense for claims of relatively low value. Given these considerations, the parties believe it is advisable to settle this claim.

### d.  Liquidated Damages for Wages

If Defendants could not prove a good faith defense to the imposition of liquidated damages, Cruz and Leon calculate that they would be entitled to recover liquidated damages equal to their owed wages, up to approximately $587,765.26.[3]  Liquidated damages under both the FLSA and NYLL are mandatory in all but exceptional circumstances, which Cruz and Leon contend are not present here. *See* 29 U.S.C. § 216(b); NYLL § 198(1–a).

### e.  Retaliation for Plaintiff Cruz

Plaintiff Cruz can potentially recover up to $20,000 in liquidated damages under the NYLL for Defendants' alleged retaliation against her for complaining about illegal pay practices and termination of employment that she alleges was at least in part in retaliation for taking job-protected sick leave. *See* N.Y. Lab. L. §§ 215(2)(a), 196-b(7). This depends on Plaintiff Cruz prevailing on her retaliation claim by convincing a jury of the underlying facts, which Defendants deny, and persuading a jury to assign the maximum value permitted under the statute, which Plaintiff Cruz acknowledges carries risk.

### f.  Age Discrimination under the NYSHRL

While it is impossible to state the highest potential recovery for Plaintiff Cruz's age discrimination claims, courts in this district have approved jury awards between $100,000 and $500,000 for "significant" emotional distress. *See Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 320 (S.D.N.Y. 2018); *see also Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 F. App'x 536, 547 (2d Cir. 2020) (noting courts have upheld emotional distress awards exceeding $200,000.00). Even if a jury were to view Ms. Cruz's claims as "garden variety," they could still award emotional distress damages in the six-figure range. *See, e.g.*, *Duarte,* 341 F. Supp. 3d at 320 ($125,000 awarded for garden-variety anxiety, sleeplessness, headaches, stomach aches, and loss of self-esteem). Accordingly, Plaintiff Cruz uses the conservative estimate of that range – $125,000 – as a reasonable estimate for possible trial recovery. This would depend not only on Plaintiff Cruz prevailing on her discrimination claim, which Defendants deny, but also convincing a jury about how to value her emotional distress, both of which Plaintiff Cruz recognizes pose significant risks.

### 2.  The Settlement Allows All Parties to Avoid the Burdens and Risks of Continued Litigation

From Cruz and Leon's perspectives, this settlement agreement will enable the parties to avoid the anticipated burdens of continuing with protracted litigation on a class and collective action. Significant time and resources have already been invested in negotiating the settlement for just two plaintiffs, and the case has not yet entered formal discovery or faced upcoming motion

---

[3] For liquidated damages, Plaintiff Cruz and Opt-In calculate that Plaintiff Cruz is owed an estimated $126,115.61 and Plaintiff Leon is owed an estimated $461,649.65.

practice, including the anticipated motion to dismiss the WTPA claims and motion seeking class or collective certification. Through settlement, Cruz and Leon avoid the stress of contentious litigation, and the loss of income associated with taking days off from work in order to attend a weeklong trial. They also avoid the stress, uncertainty, and delay that would be inherent in engaging in a trial and possibly in enforcing a judgement. Moreover, as this Court is already aware, because this matter involves a dispute among family members on opposing sides, there is a personal and emotional layer to the dispute. Resolving this issue will provide much-needed closure for all parties involved, allowing them to move forward and leave behind a difficult chapter in their personal and professional lives.

### 3. The Seriousness of the Litigation Risks Faced by the Parties

From the Cruz and Leon's perspectives, the prompt and steady payment of the settlement amount is preferable to continued litigation. Factual disputes remain about what Cruz and Leon's hours were, and what the nature of their work was, and whether, even after a successful trial, Defendants could withstand judgment enforcement. Through settlement, both parties have control over their recovery and financial exposure, and avoid accruing additional attorneys' fees for an uncertain result. The parties structured the agreement to provide significant upfront payment to Cruz and Leon, with the remainder paid out over time, in an attempt to maximize overall recovery for them and minimize impact on the continued viability of Defendants' business. Such an arrangement could only be made as part of a negotiated resolution. Cruz and Leon are interested in a settlement that eliminates the uncertainty of trial, expedites their receipt of funds, provides closure, and minimizes the disruption to their lives caused by the requisite active participation of prosecuting this case through a weeklong trial.

### 4. Settlement is a Product of Bargaining at Arm's Length and in Good Faith and There are No Indicia of Fraud or Collusion

As to the fourth and fifth *Cheeks* factors, the settlement is clearly the result of arm's length negotiation. Counsel for both parties are experienced lawyers and negotiated the attached settlement agreement in good faith and at arm's length, with the assistance of the Court. Counsel has worked extensively with their clients and in continued communication with each other and the Court to reach this settlement over several months, including negotiating a confidentiality agreement to permit sensitive financial disclosures, reviewing business records, and participating in two settlement conference sessions, each of which lasted approximately six hours. Cruz and Leon believe that negotiated settlement is in their best interest at this time, due to the inherent risk and cost of litigation, as well as the availability of meaningful non-monetary relief through settlement. Moreover, there are no indicia of fraud or collusion. As this Court witnessed, the settlement terms were negotiated intently and represent a true compromise by all parties.

### III. The Non-Monetary Terms are Reasonable

The parties' agreement does not include the types of provisions discussed in *Cheeks* that contravene FLSA's remedial purposes, such as confidentiality provisions and overbroad releases, or otherwise call into question the fairness of the settlement. *See Cheeks*, 796 F.3d at 206.

The settlement amount will be paid as follows: (1) a lump sum of $200,000 upon court approval of the settlement agreement, and (2) ten quarterly installments of $30,000 beginning on October 1, 2025. Opt-In Leon will tender his resignation upon receipt of the first lump sum payment and Cruz and Leon will release claims, including related age discrimination claims pending at the Equal Employment Opportunity Commission on behalf of Plaintiff Cruz. The settlement amount is subject to a late payment fee upon breach and secured by confessions of judgment in a higher amount for each individual and corporate defendant. The settlement agreement also includes neutral letters of reference for Cruz and Leon, and assurance that Defendants will comply with the notice requirements of the labor law and human rights law by making required postings at Gabys Cafe. There is a mutual non-disparagement provision that includes a carveout for truthful statements about the underlying facts, the litigation, and its resolution.

The settlement agreement includes a mutual general release of claims, which only extends to individuals involved in the action. (Settlement Agreement ¶ 10); *see Chowdhury v. Brioni Am., Inc.,* 2017 U.S. Dist. LEXIS 181192, at *7 (S.D.N.Y. Nov. 1, 2017). While a general release will not always pass muster under *Cheeks*, the parties believe it is reasonable in the unique circumstances of this case. In addition to FLSA claims, Plaintiff Cruz has asserted discrimination and retaliation claims, the potential trial value of which are similar in magnitude to her wage claims, and filed a charge of discrimination with the EEOC. Mr. Leon, the husband of Ms. Cruz and a relative of Defendant Alicia Mendoza, has cooked in Gabys Cafe since it opened in 2011. Given the multifaceted relationship between Plaintiffs and Defendants, the parties believe a mutual general release is in their respective best interests. While courts will not typically approve a general release from a current employee in a wage-and-hour settlement, the relationship between the parties in this case stands apart from that of a typical employee and employer. Mr. Leon's recovery can be characterized as a severance payment, including for his known wage claims, as he will be resigning his employment upon receipt of the first $200,000 of the settlement. Where, as here, plaintiffs have asserted or could assert non-wage claims, are represented by experienced counsel, and the parties wish to have a global resolution of their disputes, courts have found general releases permissible, so long as they are truly mutual. *See Souza v. 65 St. Marks Bistro*, 2015 U.S. Dist. LEXIS 151144, at *18 (S.D.N.Y. Nov. 6, 2015); *Khan v Young Adult Institute, Inc.*, 2018 U.S. Dist. LEXIS 202494, at *6 (S.D.N.Y. Nov. 29, 2018). The mutual general release in the Settlement Agreement meets these criteria.

## IV.    Plaintiffs' Attorneys' Fees are Reasonable

An award of attorneys' fees is also subject to review under *Cheeks* and must be reasonable. *See Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015). The Second Circuit courts refer to the *Goldberger* factors when assessing the reasonableness of attorneys' fees: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). While this case at this juncture was not yet particularly large or complex, Plaintiffs are represented by counsel who are experienced in representing low-wage workers in employment disputes (including class, collective, and other multi-plaintiff actions), expended a reasonable amount of time to prosecute their claims, and achieved a favorable result through this

settlement. Public policy supports an allocation of fees to ensure that high-quality representation remains available to underpaid workers who would not otherwise be able to afford counsel and whose labor law claims would otherwise go unenforced.

Under the settlement agreement, Plaintiffs' counsel would receive a total of $30,000, of which $405 constitutes costs of litigation and $29,595 (approximately 6% of the total settlement amount) constitutes fees. *See* Litigation Costs (Ex. C). This amount is significantly lower than the lodestar amount Plaintiffs would seek to recover at trial, currently estimated at $48,502.50[4] and bound to increase substantially should the case need to proceed through motion practice, discovery, and trial. *See* Declaration of Maureen Hussain, dated April 25, 2025 (Ex. B) and Time Records of Maureen Hussain and Cristina Brito and Litigation Costs (Ex. C). The requested hourly rates are $425 for Ms. Hussain and $275 for Ms. Brito, which are rates Plaintiffs' counsel have presented to courts before. *See, e.g., Alvarez Garcia et al. v. Berkshire Nursery & Supply Corp. et al.*, 7:22-cv-8776-CS (S.D.N.Y.), Dkt. 60 (approving fees as "fair and reasonable," without making specific findings about hours expended or hourly rates); *Valdes et al. v. North East Site Works, Inc. et al.*, 7:23-cv-01409-PMH (S.D.N.Y.), Dkt. 41 (granting default judgment, including all requested fees, without comment on hourly rates). The rates are squarely within the range of rates routinely approved by courts in this District. *See Alexander v. DRG Hosp. Grp., Inc.*, 2024 U.S. Dist. LEXIS 207389, at *6 (S.D.N.Y. Nov. 14, 2024) (finding hourly rate of $500 to be reasonable for two partners in wage-and-hour case resulting in $30,000 settlement); *Bevel v. Mennella's Poultry Co., Inc.*, 2024 U.S. Dist. LEXIS 36489, at *8-9 (S.D.N.Y. Mar. 1, 2024) (finding hourly rate of $500 to be reasonable for experienced solo practitioner in a single-plaintiff wage-and-hour case resulting in $13,500 settlement); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding $600 per hour to partners; $350 to senior associates, and $250 to junior associates, 17 years ago); *Gomez v. Big Line*, 2020 U.S. Dist. LEXIS 214900, at *18 (S.D.N.Y. Nov. 17, 2020) (approving hourly rate of $275 for attorney with two years of experience).

As a non-profit public interest law firm, the Worker Justice Center of New York represents low-income clients without cost to the clients. Recovering attorneys' fees supports this work by, for example, enabling us to represent indigent clients in matters where there is no fee-shifting. In light of the hours worked by Plaintiffs' counsel on this action and the average hourly rates for attorneys of similar experience practicing in the Southern District of New York, the allocation of attorneys' fees is fair and reasonable and supported by the *Goldberger* factors.

For the reasons stated above, Plaintiffs respectfully request that the Court approve the settlement agreement in this case. We thank the Court for its attention to this matter.

Respectfully submitted,

---

[4] 39 hours x $425/hour = $16,575.00 for work by Maureen Hussain; 116.1 hours x $275/hour = $31,927.50 for work by Cristina Brito. *See* Exhibit C; *Lee v. Woodstock Outdoor Co.*, 2020 U.S. Dist. LEXIS 161725, at *37-39 (S.D.N.Y. Sept. 2, 2020) (awarding $500 per hour and $350 per hour to experienced attorneys in a single plaintiff wage-and-hour case that "does not involve any novel or difficult questions" and where "the level of skills required to perform the legal services properly is basic").

*/s/ Maureen Hussain*

Worker Justice Center of New York
245 Saw Mill River Road, Suite 106
Hawthorne, NY 10532
(845) 331-6615
mhussain@wjcny.org
*Attorneys for Plaintiffs*